Javier L. Merino #078112014
**The Dann Law Firm, PC**
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Sandra Scalese*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

| | |
|---|---|
| **SANDRA SCALESE**, <br><br> Plaintiff, <br><br> v. <br><br> **NEWREZ LLC d.b.a. SHELLPOINT MORTGAGE SERVICING and THE BANK OF NEW YORK MELLON f.k.a. THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-21,** <br><br> Defendants. | Case No. <br><br> Judge <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

     Plaintiff Sandra Scalese, through counsel, states as follows for her Complaint against Defendants Shellpoint LLC d.b.a. Shellpoint Mortgage Servicing and The Bank of New York Mellon f.k.a. The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Backed Certificate, Series 2006-21:

## PARTIES, JURISDICTION, AND VENUE

     1.    Plaintiff Sandra Scalese ("Plaintiff" or "Scalese") is the owner of real property located at and commonly known as 1796 Joel Street, Vineland, NJ 08361 (the "Home").

2.     Scalese occupies and maintains the Home as her primary, principal residence and has occupied and maintained the Home as such at all times relevant to this Complaint.

3.     On December 14, 2006, Scalese executed a promissory note in the amount of $175,500.00 (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan").

4.     Scalese obtained the Loan for household purposes, namely the financing of her mortgage on the Home that she occupies as her primary residence.

5.     Defendant Newrez LLC d.b.a. Shellpoint Mortgage Servicing ("Shellpoint") is a limited liability corporation incorporated under the laws of the State of Delaware, licensed to do business in the State of New Jersey, and with its principal place of business located in Fort Washington, Pennsylvania.

6.     Defendant The Bank of New York Mellon f.k.a. The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Backed Certificate, Series 2006-21 ("BONY") is the current owner, investor, and assignee of the Loan.

7.     Shellpoint services the Loan on behalf of BONY and has acted with its authority or otherwise on its behalf in relation to the Loan at all times relevant to the causes of action pleaded in this Complaint.

8.     Shellpoint obtained servicing rights to the Loan effective on or around March 13, 2012.

9.     The Loan was in default at the time Shellpoint obtained servicing rights to the Loan—on or about March 13, 2012—as Shellpoint's records show that the Loan was due and owing for the January 1, 2010 payment.

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as this action arises out of Shellpoint's violations of the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act (RESPA), 15 U.S.C. §§ 1692, *et seq*. and of Shellpoint's and BONY's violations of the Truth in Lending Act (TILA), 12 U.S.C. §§ 1601, *et seq*.

11.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Scalese maintains the Home and resides within this District, Shellpoint does business within this District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## SUMMARY OF CLAIMS

12.     This action is filed to enforce statutory provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq*. and the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*., as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1026.1, *et seq*. ("Regulation Z").

13.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) and the Mortgage servicing Rules Under the Truth in Lending Act, 78 F.R. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

15.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16.     Sherman asserts claims for relief against Shellpoint for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

17.     Sherman has a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

18.     TILA provides that a creditor or servicer of a home loan shall provide an *accurate* payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

19.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

20.     Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

21.     The Loan is a closed-end consumer credit transaction secured by Scalese's Home as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

22.     BONY is the assignee of the Loan as defined and contemplated by TILA and Regulation Z.

23.     Scalese asserts claims for relief against BONY for violations of the specific rules under Regulation Z, as set forth, *infra*.

24.     Scalese has a private right action under TILA pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

25.     Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collections practices." 15 U.S.C. § 1692(a).

26.     Scalese asserts claims for relief against Shellpoint for breaches of specific rules under the FDCPA as set forth, *infra*.

27.     Scalese has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

28.     Shellpoint is doing business in the State of New Jersey as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

29.     Scalese additionally asserts statutory claims against Shellpoint for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA") and common law claims for breach of contract, and breach of the covenant of good faith and fair dealing.

## STATEMENT OF FACTS

### (The Modification and Subsequent Payment Issues)

30.     Scalese entered into a Balloon Modification Agreement (the "Modification") with BONY—with Shellpoint signing on behalf of BONY as its attorney in fact—having an effective date of January 1, 2020. *See*, a copy of the Modification, attached as **Exhibit 1**.

31.     Per the terms of the Modification, Scalese was to remit monthly payments of $1,465.68—subject to change with changes in amounts due for escrow—beginning with the payment January 1, 2020 payment. *See*, Exhibit 1.

32.     The Modification expressly states that the modified principal balance of $296,213.92 "will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges…less any amounts paid to the Lender but not previously credited to [the Loan]." *See*, Exhibit 1.

33.     Scalese remained wholly current on her obligations under the Modification through April 2020.

34.     Scalese remitted a payment in the amount of $1,466.00 to Shellpoint via a personal check dated May 1 2020, Check No. 245, through her account with Newfield National Bank towards the Loan which cleared her account on or before May 6, 2020 (the "May 2020 Payment"). *See*, proof of the May 2020 Payment, attached as **Exhibit 2**.

35.     Shellpoint did not apply the May 2020 Payment towards the amounts due for principal, interest, and escrow under the Loan but rather applied the funds to 'FC Costs Pmt" of $341.00 (payment of foreclosure costs) and "Attorney Cost Pmt" of $1,125.00 (payment of attorneys' fees and costs). *See*, a copy of the Loan History Statement from Shellpoint, in pertinent part, attached as **Exhibit 3**.

36.     Shellpoint erred by not applying the May 2020 Payment towards the payment contractually due for May 1, 2020 under the Loan.

37.     Moreover, there was no reasonable basis for Shellpoint to charge Scalese for the foreclosure costs and attorneys fees as such amounts should have been capitalized through the Modification.

38.     Scalese remitted two subsequent payments to Shellpoint, specifically:

    a.   A payment in the amount of $1,466.00 to Shellpoint via a personal check dated May 29, 2020, Check No. 163, through her account with Newfield National Bank towards the Loan which cleared her account on or before June 2, 2020 (the "June 2020 Payment").

    b.   A payment in the amount of $1,466.00 to Shellpoint via a personal check dated June 29, 2020, Check No. 166, through her account with Newfield National Bank towards the Loan which cleared her account on or before July 3, 2020 (the "July 2020 Payment").

*See*, proof of the June 2020 Payment and the July 2020 Payment, attached as **Exhibit 4**.

39.     At this point, due to alleged increases in the escrow portion of Scalese's monthly payments, the June 2020 Payment was not sufficient to cover the amounts claimed due and

owing for the June 1, 2020 payment and the June 2020 Payment funds were put into a suspense account. *See*, Exhibit 3.

40.     Upon receipt of the July 2020 Payment, Shellpoint effectively used the $1,466.00 in suspense and a portion of the July 2020 Payment to apply one payment of principal, interest, and escrow totaling $1,536.05. *See*, Exhibit 3.

41.     Shellpoint then used the remaining funds from the July 2020 Payment to "FC Cost Pmt" of $411.50 (payment of foreclosure costs), a "Late Charge Payment" of $57.36, and a "Principal Only Payment" of $927.07. *See*, Exhibit 3.

42.     There was no reasonable basis for Shellpoint to charge Scalese for the foreclosure costs as such amounts should have been capitalized through the Modification.

43.     At this point, Shellpoint claimed the Loan as due and owing for the payment due July 1, 2020. *See*, Exhibit 3.

44.     Scalese continued to remit payments in the following months, with the funds being placed into a suspense account and then, once enough funds accrued, being used to satisfy a monthly payment on the Loan.

45.     Essentially, the misapplication of the May 2020 Payment to fees and costs rather than to amounts owed to principal, interest, and escrow, caused each of Scalese's subsequent payments to be effectively misapplied.

46.     The application of portions of the June 2020 Payment and/or July 2020 Payment to fees that should not have been due exacerbated the problem created by the misapplication of the May 2020 Payment.

47.     Scalese remitted a payment in the amount of $1,544.00 to Shellpoint via a personal check dated September 3, 2021, Check No. 161, through her account with Newfield

National Bank towards the Loan (the "September 2021 Payment"), but Shellpoint rejected and returned such payment claiming that Scalese was more than ninety (90) days past due and would therefore have to reinstate the Loan in full.

48.     Scalese then sent correspondence along with the September 2021 Payment and a payment in the amount of $1,544.00 to Shellpoint via a personal check dated September 30, 2021, Check No. 163, through her account with Newfield National Bank towards the Loan (the "October 2021 Payment").

49.     Upon receipt of the October 2021 Payment, Shellpoint used $829.10 in funds which were in suspense, combined with the $3,008.00 October 2021 Payment, and applied the funds towards two two payments of principal, interest, and escrow totalling $3,086.50, with the remainder $830.60 being placed back into the suspense account. *See*, a copy of Scalese's correspondence, attached as **Exhibit 5**.

50.     On or about November 1, 2021, Scalese remitted a payment in the amount of $1,544.00 to Shellpoint via a personal check towards the Loan (the "November 2021 Payment"), but again rejected such payment stating that Scalese was more than ninety (90) days past due and would therefore have to reinstate the Loan in full. *See*, a copy of Shellpoint's correspondence, attached as **Exhibit 6**.

**(Attempts to Investigate and Correct Potential Problems with the Loan)**

51.     Confused as to how she was more than ninety (90) days past due in September 2021, Scalese retained the services of legal counsel to investigate the purported payment issues related to the Loan.

52.     On or about December 7, 2021, Scalese, through counsel, sent correspondence to Shellpoint, via certified mail, at the address designated by Shellpoint for borrowers to send

notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"), specifically:

    a.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" [Tracking No. 70140150000001583423] through which Scalese requested information related to the servicing of the Loan including, *inter alia*, a transaction history for the Loan, servicing notes for the Loan, and correspondence concerning loss mitigation attempts as to the Loan ("RFI #1"); and,

    b.  Correspondence captioned "Request for information pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" [Tracking No. 70142870000158313455] through which Scalese requested a payoff statement for the Loan and the identity of and contact information for the owner or investor of the Loan ("RFI #2")

*See*, a copy of RFI #1 along with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 7**; *see*, a copy of RFI #2 along with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 8.**

53.    Shellpoint received RFI #1 and RFI #2 (collectively the "RFIs") at the Designated Address on or before December 16, 2021. *See*, Exhibits 7 and 8.

54.    Shellpoint sent correspondence dated January 20, 2022 in response to the RFIs dated January 20, 2022 (the "Response"). *See*, a copy of the Response, without enclosures, attached as **Exhibit 9**.

55.     Prior to sending the Response, Shellpoint did not send, nor did Scalese or her counsel receive, any other written communication concerning the RFIs.

56.     Per the transaction history enclosed with the Response, on or about January 7, 2022, Shellpoint reversed and reapplied payments dating back to the May 2020 Payment. *See*, Exhibit 3.

57.     Through these reversals and reapplications, Shellpoint reapplied the May 2020 Payment to amounts owed for principal, interest, and escrow rather than the attorney and foreclosure fees and costs as originally applied. *See*, Exhibit 3.

58.     The net effect of these reversals and reapplications was that rather than being due and owing for the August 1, 2021 payment, Scalese was now due and owing for the October 1, 2021 payment. *See*, Exhibit 3.

59.     Outside of the transaction history, Shellpoint made no mention or explanation of the corrective entries and transactions completed on January 7, 2022. *See*, Exhibit 9.

60.     Notably, despite deciding that over fifty (50) corrective entries and transactions were required on January 7, 2022, which altered the due date of the Loan by two (2) months, Shellpoint claimed through the Response that it "has been unable to determine that an error has occurred in the servicing of the [Loan]." *See*, Exhibit 9.

61.     Had Shellpoint originally properly applied Scalese's May 2020 Payment and the payments remitted thereafter, the Loan would not have been ninety (90) days delinquent as of the remittance of the September 2021 Payment, the October 2021 Payment, or the November 2021 Payment. *See*, Exhibits 2, 3, 4, and 5.

62.     Enclosed with the Response was a payoff statement dated January 20, 2022 (the "Payoff"). *See*, a copy of the Payoff, attached as **Exhibit 10**.

63.     The Payoff states that Scalese was due and owing for "Fees" of $2,555.03 consisting of, *inter alia*, "Attorney Cost" of $1,125.00 and "FC Costs" of $752.50 (foreclosure costs). *See*, Exhibit 10. Notably, Shellpoint *still* demanded these amounts even after making the fifty (50) corrective entries and transactions on January 7, 2022, as described, *supra*, in ¶¶ 60-61.

64.     As indicated, *supra*, Shellpoint had no reason to impose or otherwise demand payment of amounts from Scalese for the foreclosure costs or attorneys fees as such amounts should have been capitalized through the Modification. *See*, Exhibits 1 and 10.

## IMPACT AND DAMAGES

65.     Shellpoint misapplied Scalese's payments under the terms of the Modification, then, when preparing the Response, surreptitiously issued over fifty (50) corrections to the servicing of the Loan despite already having rejected multiple payments remitted by Scalese, wrongfully declaring Scalese to be more than ninety (90) days delinquent, and accelerating the Loan.

66.     The improper actions of Shellpoint and BONY (collectively, "Defendants") caused Scalese to suffer from further actual and proximate damages including, but not limited to:

    a.  Legal fees, costs, and expenses to submit the RFIs to Shellpoint in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter or to have Shellpoint mitigate the harm caused to Scalese to which Scalese did not receive a proper, adequate, or accurate response;

    b.  Unwarranted harm to her credit rating due to the Shellpoint's actions exacerbating any delinquency on the Loan and prematurely accelerating the Loan and otherwise prematurely claiming that the Loan was more than ninety

(90) days delinquent from Shellpoint's wrongful conduct and a significant delay in the rehabilitation of her credit for which he has not received proper redress from Shellpoint;

c.   Improper fees and charges imposed on the Loan claimed due and owing by Defendants through, *inter alia*, the Payoff as Defendants have demanded amounts due and owing for which Defendants had no reasonable basis to claim as due and owing as such amounts should have been capitalized into the Modification as well as other default servicing related fees for which Scalese is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled; and,

d.   Severe emotional distress driven by this wrongful exacerbation of any delinquency on the Loan, the premature declaration of default, by the demand for unwarranted amounts claimed to be due and owing on the Loan, and by the justified fear that such actions are the start of a slippery slope leading to foreclosure proceedings and the ultimate sale of her Home unless she pay amounts and fees which are not warranted or otherwise properly due and owing which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress. *See*, a copy of Shellpoint correspondence dated February 18, 2022 where Shellpoint threatened Scalese by claiming "[w]e have a right to invoke foreclosure based on the terms of your mortgage contract", attached as **Exhibit 11**.

### COUNT ONE: AGAINST SHELLPOINT
### VIOLATIONS OF 12 C.F.R. § 1024.36(c) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely acknowledge RFI #1 and RFI #2)

67.     Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

68.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

69.     "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a)

70.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

71.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.36(c), *see also*, 12 U.S.C. § 2605(e)(1).

72.     The RFIs each constitute a request for information as defined by 12 C.F.R. § 1024.35(a) as each is a "written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." *See*, Exhibits 7 and 8.

73.     Scalese sent each of the RFIs to Shellpoint at the Designated Address and Shellpoint received each of the RFIs at the Designated Address on or before December 16, 2021. *See*, Exhibits 7 and 8.

74.     Shellpoint was required to send written communication to Scalese acknowledging receipt of the RFIs within five (5) business days of receipt—that is, on or before December 23, 2021. *See*, Exhibits 7 and 8.

75.     Shellpoint failed to provide any written communication to Scalese acknowledging receipt of either of the RFIs within five (5) business days of its receipt of either of the RFIs —that is, on or before December 23, 2021. *See*, Exhibits 7 and 8.

76.     Shellpoint failed to timely acknowledge each of the RFIs as required by 12 C.F.R. § 1024.36(c) and/or 12 U.S.C. § 2605(e)(1) which constitutes two (2) clear, distinct, and separate violations of 12 C.F.R. § 1024.36(c) and 12 U.S.C. § 2605(k)(1)(E), one (1) such violation for each of the RFIs Shellpoint failed to timely acknowledge in writing.

77.     Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for Scalese's rights.

78.     As a result of Shellpoint's actions, Shellpoint is liable to Scalese for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

79.     Additionally, Scalese requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO: AGAINST SHELLPOINT**
**VIOLATION OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)**

**(Failure to timely and properly respond to RFI #2)**

80.     Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

81.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

82.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

83.     A servicer must respond to a request for information by:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

84.     Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A)    Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B)    For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

85.     RFI #2 is a request for information as defined by 12 C.F.R. § 1024.36(a) as it contains Scalese's name, loan number, property address, and requested information related to the Loan. *See*, Exhibit 8.

86.     Scalese sent RFI #2 to Shellpoint at the Designated Address and Shellpoint received RFI #2 at the Designated Address on or before December 16, 2021. *See*, Exhibit 8.

87.     Through RFI #2, Scalese requested that Shellpoint provide the identity of and contact information for the owner or investor of the Loan. *See*, Exhibit 8.

88.     Shellpoint was required to provide the identity of and contact information for the owner or investor of the Loan within ten (10) business days of December 16, 2021—on or before January 3, 2022. *See*, Exhibit 8; 12 C.F.R. § 1024.36(d)(2)(i)(A).

89.     Shellpoint did not provide the identity of and contact information for the owner or investor of the Loan within ten (10) business days of December 16, 2021, as required by 12 C.F.R. § 1024.36(d), and did not provide such information until sending the Response on or about January 20, 2022.

90.     Shellpoint's failure to provide a timely written response to RFI #2 constitutes a violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k) and has caused Scalese to suffer actual damages as detailed, *supra*.

91.     Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for Scalese's rights and in abdication of Shellpoint's obligations under RESPA and Regulation X.

92.     Shellpoint's conduct as pleaded, *supra*, shows a conscious disregard for Scalese's rights and Shellpoint's obligations under RESPA and Regulation X.

93.     As a result of Shellpoint's actions, Shellpoint is liable to Scalese for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

94.     Additionally, Scalese requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE: AGAINST BONY
## VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)

### (Failure to provide a timely and accurate payoff statement)

95.     Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

96.     Scalese submitted a request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) through RFI #2. *See*, Exhibit 8.

97.     Shellpoint received the request for a payoff statement contained in RFI #2 on or before December 16, 2021. *See*, Exhibit 8.

98.     BONY—or Shellpoint acting on behalf of BONY—failed to timely provide a payoff statement for the Loan in response to RFI #2 within seven (7) business days of December 16, 2021—on or before December 28, 2021 —as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

99.     The actions of BONY—or Shellpoint acting on behalf of BONY—in failing to timely provide a payoff statement for the Loan in response to RFI #2 within seven (7) business days of December 16, 2021 constitute violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) and have caused Scalese to suffer actual damages as detailed, *supra*.

100.     Shellpoint eventually sent the untimely Payoff on or about January 20, 2022. *See*, Exhibit 10.

101.    The Payoff states that Scalese was due and owing for "Fees" of $2,555.03 consisting of, *inter alia*, "Attorney Cost" of $1,125.00 and "FC Costs" of $752.50 (foreclosure costs). *See*, Exhibit 10.

102.    As indicated, *supra*, Shellpoint had no reason to impose or otherwise demand payment of amounts from Scalese for the foreclosure costs or attorneys fees as such amounts should have been capitalized through the Modification. *See*, Exhibits 1 and 10.

103.    By including these unwarranted fees in the Payoff, BONY—or Shellpoint acting on behalf of BONY—failed to provide an accurate payoff statement as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

104.    The actions of BONY—or Shellpoint acting on behalf of BONY—in failing to provide an accurate payoff statement for the Loan in response to RFI #2 constitute violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) and have caused Scalese to suffer actual damages as detailed, *supra*.

105.    BONY is vicariously liable for violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) committed by its servicers as alleged in this matter. *See, inter alia*, *Kolano*, 2014 WL 1117862 at *6; *see also*, *supra*.

106.    As a result of the actions of BONY and Shellpoint—acting on behalf of BONY—BONY is liable to Scalese for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3); 15 U.S.C. § 1641.

**COUNT FOUR: AGAINST SHELLPOINT**
**VIOLATION OF THE FDCPA, 15 U.S.C. § 1692**

107.    Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

108.    Scalese is a "consumer" as she is a natural person obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

109.    The Loan is a "debt" because it is an obligation or alleged obligation of Scalese to pay money arising out of a transaction primarily for personal, family, or household purposes as Scalese financed the Home—her primary, principal residence—through the Loan. 15 U.S.C. § 1692a(5).

110.    Shellpoint is a "debt collector" because it regularly collects or attempts to collect on the Loan and other mortgage loans owed to other creditors and assignees, such as BONY. 15 U.S.C. § 1692a(6).

111.    The Loan was in default at the time Shellpoint obtained servicing rights to the Loan—on or about March 13, 2012—as Shellpoint's records show that the Loan was due and owing for the January 1, 2010 payment. *See*, 15 U.S.C. § 1692a(6)(F)(iii)

112.    The FDCPA, 15 U.S.C § 1692e, provides, *inter alia*, that a Debt Collector may not use any false, deceptive, or misleading representation or means in connection with the debt collection.

113.    The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of: (1) False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A)); and, (3) false representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

114.    Shellpoint violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), by: Issuing the inaccurate Payoff and other written demands which demanded amounts due for unwarranted

fees and/or expenses for which Shellpoint had no reasonable basis to impose or collect; by misapplying Scalese's payments under the Loan and claiming that Scalese's delinquency was more severe than it truly was; and, by claiming that the Loan was ninety (90) days delinquent when it was not. *See*, Exhibits 1, 2, 3, 4, and 5.

115.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

116.    Shellpoint violated 15 U.S.C. § 1692f through its actions in rejecting the September 2021 Payment and the November 2021 Payment, as Shellpoint wrongfully claimed that Scalese was more than ninety (90) days delinquent. *See*, Exhibits 2, and 5.

117.    Shellpoint used false, deceptive, or misleading representations in connection with the collection of the Loan by issuing the Payoff and other written demands which demanded amounts due for unwarranted fees that should not have been due in the not due and owing.

118.    Shellpoint's actions have caused Scalese to suffer actual damages, further described, *supra*, including but not limited to requiring Scalese to incur attorneys' fees and costs related to the preparation and mailing of RFI #1 and RFI #2 in order to obtain information related to the Loan and attempt to have Shellpoint correct its erroneous conduct.

119.    As a result of Shellpoint's conduct, Scalese suffered extreme emotional distress driven by the fear that Shellpoint's actions would lead to an unwarranted foreclosure of and the loss of and eviction from her Home which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress. *See* Exhibit 11.

120.    As a result of Shellpoint's actions, Shellpoint is liable to Scalese for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

121.     Additionally, Scalese requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

### COUNT FIVE: AGAINST SHELLPOINT
### VIOLATIONS OF N.J.S.A. § 56:8-2, THE CONSUMER FRAUD ACT

122.     Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

123.     The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

124.     In the operation of its business, Shellpoint has engaged in the use of unlawful practices, as further described, *supra.*

125.     Each unconscionable practice, deception, false promise, misrepresentation and/or knowing omission of material fact by Shellpoint described, *supra*, constitutes a separate violation under the CFA.

126.     Shellpoint is a "person" as defined by N.J.S.A. § 56:8-1(d) as Shellpoint is a partnership, corporation, company, trust, business entity, or business association.

127.     Shellpoint's actions in misrepresenting to Scalese that she owed amounts for fees which Shellpoint had no reasonable basis to impose, through the Payoff and otherwise, and by claiming that the Loan was more than ninety (90) days delinquent constitute unlawful practices under the CFA.

128.   Shellpoint's actions in misrepresenting through the Modification that the modified principal balance of $296,213.92 "will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges…less any amounts paid to the Lender but not previously credited to [the Loan]" then thereafter assessing *and* collecting on default-related foreclosure fees and costs, constitute an unlawful practice under the CFA.

129.   Shellpoint's actions in knowingly misapplying Scalese's payments and thereafter threatening a foreclosure on her Home constitute an unlawful practice under the CFA.

130.   Shellpoint's unlawful practices have caused Scalese ascertainable losses, described *supra*.

131.   As a result of Shellpoint's actions, Shellpoint is liable to Scalese for actual damages as further alleged, *supra,* and attorneys' fees and costs. Scalese is entitled to treble the damages caused by Shellpoint's violations of the CFA. N.J.S.A. § 56:8-19.

### COUNT SIX: AGAINST BONY
### BREACH OF CONTRACT

132.   Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

133.   The Loan, as modified through the Modification, is an enforceable contract between Scalese and BONY.

134.   BONY—directly or through Shellpoint—breached the contract by misapplying the May 2020 Payment and the payments remitted thereafter, by demanding payment of amounts due for attorneys' fees and foreclosure costs which are unwarranted and contrary to the terms of the Loan and Modification, and by refusing to accept and apply payments while claiming that the Loan was more than ninety (90) days past due when it was not.

135.    BONY owed Scalese a fiduciary duty to handle her Loan properly and in accordance with the terms of the Loan as modified through the Modification.

136.    Scalese suffered harm as a result of BONY's actions as such actions exacerbated any delinquency on the Loan and caused damage to her credit standing, caused her to incur legal fees and costs having counsel send the RFIs and review the response, as well other harm further described, *supra*.

137.    Further, BONY's intentional and knowing conduct caused Scalese to suffer extreme emotional distress driven by the fear that the manufactured exacerbation of any delinquent and the premature declaration of default on the Loan would lead to foreclosure proceedings and her Home being sold at foreclosure sale, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which is a foreseeable result of its breach of the Loan

138.    As a result of Shellpoint's actions, Shellpoint is liable to Scalese for actual damages.

**COUNT SEVEN: AGAINST BONY**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

139.    Scalese repeats and realleges paragraphs 1 through 67 with the same force and effect as though fully set forth hereon.

140.    BONY is in privity of contract with Scalese through the Loan, as modified through the Modification,, and as such, BONY is obligated by contract and common law to act in good faith and to deal fairly with Scalese.

141.    The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectation of the parties in their performance.

142.    BONY breached this duty by misapplying the May 2020 Payment and the payments remitted thereafter, by demanding payment of amounts due for attorneys' fees and foreclosure costs which are unwarranted and contrary to the terms of the Loan and Modification, and by refusing to accept and apply payments while claiming that the Loan was more than ninety (90) days past due when it was not.

143.    BONY has acted in bad faith, dishonestly, with an improper motive to injure Scalese's rights.

144.    Scalese has suffered and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress as further described, *supra*.

145.    As a result of BONY's conduct, BONY is liable to Scalese for actual damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Sandra Scalese prays this Court enter its Order granting Judgment against Defendant Shellpoint Mortgage Servicing, as follows:

A.  For an award of actual damages as to allegations contained in Counts One, Two, Four, and Five;

B.  An award of statutory damages of Two Thousand Dollars ($2,000.00) for each violation of RESPA contained in Counts One and Two for a total of Six Thousand Dollars ($6,000.00);

C.  For and award of statutory damages of up to One Thousand Dollars ($1,000.00) for violating the FDCPA as alleged in Count Four;

D.  For attorneys' fees and costs as to Counts One, Two, Four, and Five;

E.  For treble damage as to Count Five;

F.  For emotional distress damages as to Counts One, Two, Four, and Five; and,

G.  Such other relief which this Court may deem appropriate.

**WHEREFORE,** Plaintiff Sandra Scalese prays this Court enter its Order granting Judgment against Defendant The Bank of New York Mellon f.k.a. The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Backed Certificate, Series 2006-21, as follows:

A.  For an award of actual damages as to allegations contained in Counts Four, Six, and Seven;

B.  For statutory damages of no less than Four Hundred Dollars ($400.00) and up to Four Thousand Dollars ($4,000.00) for the violations of TILA as contained in Count Four;

C.  For attorneys' fees and costs as to Count Four;

D.  For emotional distress damages as to Counts Four, Six, and Seven; and

E.  Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Javier L. Merino
Javier L. Merino
The Dann Law Firm, PC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Sandra Scalese*

## JURY DEMAND

Plaintiff Sandra Scalese hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
The Dann Law Firm, PC
*Counsel for Plaintiff Sandra Scalese*